FIRST NAT. BANK OF RICHMOND *v.* CITY OF RICHMOND *et al.*

(*Circuit Court, E. D. Virginia.* July 15, 1889.)

TAXATION—NATIONAL BANKS.
    Rev. St. U. S. § 5219, providing that shares of national bank stock may be taxed as part of the personalty of the owner, and that each state may tax them in its own manner, except that the taxation shall not be at a greater rate than is imposed on other "moneyed capital" owned by citizens of the state, and that the shares of non-residents shall only be taxed in the city wherein the bank is located, do not authorize the taxation of the stock of a bank *in solido* by the city in which it does business, but only the shares of individual owners residing in the city are taxable, and they must be taxed separately, in order that the owner may deduct from their value the amount of his personal indebtedness, where the state laws or municipal ordinances permit such deductions, and require equality of taxation.

In Equity. Bill for injunction.
*Johnston, Boulware & Williams,* for complainant.
*C. V. Meredith,* City Atty., for defendants.

HUGHES, J. The question in this case is upon the amount of a tax assessed by the city of Richmond upon a national bank, and upon the manner of assessing and collecting it. It was competent for congress to

have prohibited any taxation of the national banks by states, cities, counties, or towns. Indeed, on general principles of public policy, the mere silence of congress on the subject, in its legislation respecting the national banks, would have been a prohibition of such taxation. But congress was not entirely silent, and provided, in section 5219 of the Revised Statutes of the United States, that nothing in its legislation respecting the national banks should be construed to "prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere." A clause is added, authorizing real estate of national banks to be taxed by the states at the same rate as other real estate. Authority is here given to tax the shares of national banks as part of the taxable estates of the owners of the shares; and, in laying this tax, the state is prohibited from assessing it at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens. It is plain that the tax authorized by congress is a several tax upon the shares of each individual stockholder, as distinguished from a lumping tax, or tax *in solido*, upon the bank itself. By "moneyed capital" is evidently meant, either money itself, or negotiable securities readily convertible into money, and having a quotable market value, as distinguished from ordinary property. In substance, therefore, congress declares that national bank shares may be assessed for taxation as the property of the individual owners of them respectively, and that these shares, being themselves moneyed capital, shall not be assessed at a higher rate than is assessed upon other forms of moneyed capital in the hands of individual citizens. The constitution of Virginia requires that taxation shall be equal and uniform; that no species of property shall be taxed higher than any other species of property; and that stocks shall be taxed according to their market value. An ordinance of the city of Richmond provides that any person taxed may deduct from the aggregate value of solvent debts and securities held by him all bonds, securities, liquidated claims, and demands due from him to others, in computing the tax to be assessed against him. The city of Richmond imposes a tax of one and four-tenths per cent. of their market value upon all shares of stock in any bank or corporation of the city whose capital stock is itself not assessed for taxation.

In this condition of the law, the defendant F. W. Cunningham, city collector of the city of Richmond, presented for payment a tax-bill to the First National Bank of Richmond, the complainant here, made out as follows:

1889.

Mr. H. C. Burnett, Cashier of the **First National Bank of the City of Richmond,** to the City of Richmond, **Dr.**

For taxes upon shares of stock -    °     -    $840,000
      Less value of real estate -    °     °       38,320

                                $801,680 at 1.4=$11,223 52

Whereupon the bank exhibited in this court its bill of complaint against the city of Richmond and its collector, praying an injunction against the collection of the tax. A temporary injunction was granted, and the case is now heard for a final decree, either of perpetuation or dismissal. The bill recites that the capital of the bank is $600,000, (which seems to have produced a surplus fund of $240,000;) that the par value of its shares (6,000 in number) is $100, and their market value $140; that its capital consists in part of—

| | |
|---|---:|
| Real estate, (specifically taxed,) worth    -    °    -    - | $ 38,000 |
| United States bonds, (non-taxable)    °    -    °    - | 134,000 |
| Virginia state bonds, (non-taxable,)    °    °    ,    ° | 64,500 |
| City of Richmond bonds, (non-taxable,)    °    °    - | 49,000 |
| Stock in the Union Bank of Richmond, (whose tax is paid by that bank,) -    °    °    °    °    °    °    - | 10,500 |
| Aggregating    °    -    -    .    -    -    - | $296,000 |

—all of which property is tax-paid or non-taxable as against the First National Bank.

The bill charges that the city imposes, and requires the bank to pay, the tax of one and four-tenths per cent. upon the market value of its shares, without allowance of any deduction for the non-taxable securities and specifically taxed property thus shown to be held by the bank; and charges also that this tax is so assessed that the owners of the shares thus taxed are deprived of the privilege, allowed other moneyed capitalists, of deducting from the amount of securities held by them, including their shares, respectively, the amount of bonds, securities, liquidated claims, and demands due from them respectively to others. It complains that, besides this discrimination against its own individual shareholders in favor of other moneyed capitalists, the city unlawfully discriminates against the banks of the city, as corporations, in favor of corporations which are taxed on their capital stock, all of which latter are allowed to deduct the amount of exempted securities held by them from the values assessed against them. Thus it is charged that, contrary to national, state, and municipal law, the tax levied against the shareholders of the complainant, under the present system of taxation enforced by the city of Richmond, discriminates against them in three particulars, viz.: (1) Other corporations get the benefit of relief from taxation upon all non-taxable securities which form part of their capital, in which relief their shareholders participate; whereas, under the method of taxation complained of, this bank's shareholders are deprived of such relief as to nearly half the amount of its original capital. (2) The tax being as-

sessed against the cashier of the bank, and not against the shareholders severally, these latter are deprived of the privilege accorded by the city to the owners of other moneyed capital, of deducting the amount of the debts they owe, from the value of the bonds and securities which they hold, in estimating the amount on which they are taxable. (3) These discriminations against banks in favor of other corporations, and against shareholders of banks in favor of other moneyed capitalists, violate the provision of the state constitution, requiring taxation to be equal and uniform. ·

It is apparent from an inspection of the tax-ticket and the provisions of law under consideration that the discriminations complained of by the bill must result from an enforcement of the tax. There is no room for doubt of the fact that the city of Richmond, in assessing the tax complained of in the manner described in the bill, does discriminate against shareholders of national banks, in favor of other moneyed capitalists, in all the respects specified, and that this discrimination violates alike a leading provision of section 5219 of the United States Revised Statutes, a like provision of the tenth article of the Virginia constitution, and a just provision of an ordinance of Richmond conferring a privilege of great importance upon all holders of taxable securities, who themselves owe debts. The fact is too obvious to need illustration; and the only question for this court, as a federal court, is whether the decisions of the supreme court of the United States, in cases on this subject which have gone before it, have sanctioned or condemned such discriminations. A considerable number of cases involving the construction of section 5219 of the United States Revised Statutes have gone to that court, in which the complaint has been of discriminations against national banks and their shareholders, in favor of owners of other moneyed capital, in the assessment of taxes by the states. In most of them the court has upheld the tax; in others it has pronounced against it. From the nature of the subject, each case has presented its own special facts, and has differed in these facts from every other case. Up to this time no case of this class has gone from Virginia, and none, like the one at bar, has presented a scheme of taxation charged to be in violation at once of national, state, and municipal law. The supreme court has dealt liberally with the tax laws of the states which have been brought under its review. It has held that the shares of national banks may be taxed by the states, though no provision be made in assessing it for deducting from computation the always large amount of United States bonds held by the banks. It has held that the tax upon the shares of these banks may be assessed upon and collected from the banks themselves. It has held that neither of these circumstances in itself vitiates a tax. Even in cases where it has appeared that the system of taxation enforced by a state has operated unequally as between shareholders of national banks and owners of other moneyed capital, the court has not looked upon the system with unfriendly scrutiny and illiberal spirit; but in cases where the discrimination was trivial or technical, or such as must always result from the greater or less imperfection of all human legislation, it has declined to

interpose in behalf of the tax-payer. Further than thus indicated, I do not discover in the many decisions in which that court has given construction to section 5219 any general principle laid down applicable to all cases that have arisen. The court has decided each case upon its own special facts. The question has continually been, does the tax materially and injuriously discriminate against the shareholders of national banks? And in every case the question has been rather one of fact than of law.

In deciding that shareholders of national banks may be taxed at a rate in fixing which no account has been taken of the non-taxable United States bonds required by law to be held by those banks, the court has not made so absolute a ruling that, if it should be shown in any particular case that such omission operates as a material and injurious discrimination against national bank shareholders, in favor of other moneyed capitalists, the tax thus operating may not be pronounced illegal. The paramount question in every case is whether or not the tax, or system of taxation, complained of, materially and injuriously discriminates against national bank shareholders, in favor of other moneyed capitalists, in a degree tending to discourage investments in the shares of the national banks. Upon this question of fact the decisions of the supreme court have turned, and all decisions on this subject must turn. As already indicated, I do not think the tax complained of in the case under consideration can stand this test. The question need not be decided in the present case; but it is doubtful whether congress, in authorizing the states to tax the shares of national banks, under legislation of their own, prescribing the manner and place of doing so, intended thereby to authorize cities, counties, and towns to exercise the same power. The mere fact that municipal corporations may tax national banks at their pleasure would tend strongly to discourage investments in their shares; and no instance of such a tax has yet gone to the supreme court of the United States; but if the right exists, and if the city of Richmond may legitimately impose a tax on the national banks doing business within it, yet I think that the tax complained of here is one whose necessary effect must be to discourage investments in national banks. Congress requires the tax to be assessed as part of the personal property of the owners of the shares of the bank. It does not authorize a tax upon the bank itself. The city has no power to assess a tax upon the bank *in solido.* It can assess only the shares, and these only as the property of the shareholders. There are 6,000 shares of the stock of this complainant, held doubtless by hundreds of different persons residing in Richmond and other cities, and in the counties surrounding Richmond, and in the state at large. By section 5210 of the United States Revised Statutes congress requires every national bank to keep at all times for public inspection "a full and correct list of the names and residences of all the shareholders in the association, and the number of shares held by each, in the office where its business is transacted." If it be within the legal power of the city of Richmond to tax the shares of those stockholders of the national banks here who are residents of the city, certainly that is the extent of its

power.   It cannot tax the banks themselves.   It can tax only the shares of their shareholders, as part of their individual property, and of course only of those shareholders who are its own resident citizens, and whose other personal property it may of right tax.   It was practicable for the city to call for a list of the names and residences of the shareholders of the First National Bank of Richmond, and to tax the shares of those of them who were its own residents.   It was not competent for it, in doing so, to assess the shares even of its own residents in such wise as to bar them from the privilege of offsetting the amount of the debts they might owe against the value of their shares in the bank and the other securities which they might hold; and especially was it not competent for the city, in laying its tax, to proceed upon the violent assumption that all the shares of the bank are held by residents of Richmond, and none by residents of other localities in Virginia and elsewhere.   To assess the tax as if against the bank *in solido*, on a value made up of the whole amount of the bank's capital and surplus fund, without deduction for non-taxable securities, constituting nearly half the bank's capital; to require this tax to fall upon the whole body of the bank's shareholders, wherever resident, whether in Richmond or Virginia; and to give no shareholder the privilege of deducting the amount of his debts from that of securities due him in determining the net value of his estate,—these features of the tax complained of by the bill under consideration all seem to me to condemn it as contrary alike to national, state, and municipal law, and as discriminating against the owners of national bank shares in favor of other moneyed capitalists, in a manner obnoxious to the policy of congress in regard to the national banks, and seriously discouraging to investments in national bank shares.   I will sign a decree of perpetual injunction, this ruling being founded on the decisions of the supreme court of the United States in the cases of *Hills* v. *Bank*, 105 U. S. 319, and *Whitbeck* v. *Bank*, 127 U. S. 193, 8 Sup. Ct. Rep. 1121.   In dealing with the subject I have also considered the decisions of the same court in *Van Allen* v. *Assessors*, 3 Wall. 573; *People* v. *Commissioners*, 4 Wall. 244; *Bank* v. *Com.*, 9 Wall. 353; *Bank* v. *New York*, 121 U. S. 138, 7 Sup. Ct. Rep. 826; *Lionberger* v. *Rouse*, 9 Wall. 475; *Waite* v. *Dowley*, 94 U. S. 533; *Supervisors* v. *Stanley*, 105 U. S. 311; *Bank* v. *Kimball*, 103 U. S. 733; *Pelton* v. *Bank*, 101 U. S. 143; *Cummings* v. *Bank*, Id. 153; *Bank* v. *Davenport*, 123 U. S. 83, 8 Sup. Ct. Rep. 73; and *People* v. *Weaver*, 100 U. S. 539.   The jurisdiction of this court, as a court of chancery, to entertain this bill, I have thought too plain to need discussion.