[Civ. No. 6557. Third Dist. Jan. 31, 1942.]

FIRST FEDERAL SAVINGS AND LOAN ASSOCIA-
TION OF ALTADENA (a Corporation), Appellant, v.
CHARLES G. JOHNSON, as State Treasurer, etc., et al.,
Defendants; Charles J. McColgan, as Franchise Tax
Commissioner, etc., Respondent.

McEachern & Ritchie for Appellant.

Earl Warren, Attorney General, and H. H. Linney and Valentine Brookes, Deputies Attorney General, for Respondents.

THOMPSON, Acting P. J.—The plaintiff has appealed from a judgment of dismissal which was rendered against it after a general demurrer to the complaint had been sustained. By this action the plaintiff sought to recoup franchise taxes levied by the State of California pursuant to article XIII, section 16, of the state Constitution, and the corresponding enabling act of the legislature. (Stats. 1929, p. 19; Deering's Gen. Laws, 1937, Act 8488.) The taxes were paid under protest.

The complaint alleges that plaintiff is a Federal Savings and Loan Association, organized under the United States statute, and doing business in Los Angeles, California; that it was granted a federal charter in 1934, as a branch of the government, under the Home Owners' Loan Act of 1933 (12 U. S. C. A., p. 984, secs. 1461-1468), to finance the building of homes in California, pursuant to that act of Congress; that the federal government supplied the plaintiff with the aggregate sum of $775,000 for the purpose of such loans, all of which was used for that purpose, together with other corporation funds; that pursuant to California law (Stats. 1929, p. 19, as amended, Act 8488, 2 Deering's Gen. Laws of Calif., p. 3851), the defendants levied and collected from plaintiff franchise taxes in the aggregate sum of $2,056.93, computed on the

same basis applicable to "other similar local mutual . . . and home financing institutions" which taxes were paid under protest. The complaint alleges that the taxes in question were computed on the basis of the annual net income of plaintiff derived from investments of "both locally deposited funds and funds invested by the Federal Government." The complaint asks for repayment of said sum of $2,056.93 on the ground that it was illegally levied and collected.

The defendants demurred to the complaint on the ground that it fails to state facts sufficient to constitute a cause of action. The demurrer was sustained. The plaintiff failed to amend its complaint. Judgment was thereupon rendered dismissing the suit. From that judgment the plaintiff has appealed.

The appellant contends that the franchise tax in question was illegally levied and collected by the State of California for the reason that all assets, except the real estate of the plaintiff, First Federal Savings and Loan Association of Altadena, are exempt from all state taxes since it is an agency of the United States and Congress has not affirmatively authorized such property to be taxed, and that, in any event, the state lacks authority to levy such taxes based on the portion of plaintiff's income which is derived from the investment of funds furnished by the federal government.

We are of the opinion the complaint fails to state facts sufficient to constitute a valid cause of action for the repayment of franchise taxes levied and collected pursuant to law, and that the demurrer to the complaint was therefore properly sustained. The judgment of dismissal necessarily followed.

Ever since the Supreme Court of the United States rendered its opinion in the famous case of *McCulloch* v. *The State of Maryland,* reported in 17 U. S. (4 Wheat.) at page 316 [4 L. Ed. 579], it has been recognized as a fact that the states of this union may not impose taxes upon the assets or property of any agency or branch of the federal government, with the exception of real property, without consent of Congress. For the purposes of this appeal, it may be conceded the plaintiff in this case is an instrumentality of the federal government for the purpose of loaning its money advanced to relieve financially distressed owners of farms and homes, pursuant to the provisions of the Home Owners' Loan Act of 1933, which

was adopted by Congress as an emergency measure under the general welfare clause of the federal Constitution. It may also be conceded that mere silence or failure on the part of Congress to enact legislation with respect to the taxing of property of particular governmental agencies, may be deemed to constitute a prohibition against the levying of such taxes by a state. (*First National Bank* v. *Richmond*, 39 Fed. 309.)

It is, however, acknowledged that Congress may lawfully authorize the states to levy and collect taxes on certain property and assets or income derived from governmental agencies doing business within such states, by appropriate legislation therefor. From time to time, ever since 1864, Congress has specifically authorized the states to levy and collect taxes on specified classes of property and incomes of particular governmental agencies. In 1923, Congress specifically authorized the states to tax the shares, dividends and net income of "National banking associations" located within their borders, to the extent and in the manner prescribed by section 548 of the Federal Code. (12 U. S. C. A. p. 604, sec. 548, as amended in 1926.) That section provides in part:

"The legislature of each state may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several States may . . . tax such associations on their net income, or according to or measured by their net income."

Pursuant to the foregoing authorization on the part of Congress, article XIII, section 16, of the Constitution of California was adopted in 1930, authorizing the levying and collection of annual franchise taxes against all "banks, including national banking associations, located within the limits of this state" and against all "financial, mercantile, manufacturing and business corporations" similarly located and doing business in California, for the privilege of operating therein, "equivalent to four per cent of their net income." To carry into effect the provisions of the preceding section of article XIII of the Constitution, the Legislature of California adopted chapter 13 of Statutes of 1929, which is found at page 19 thereof.

The Federal Home Owners' Loan Act of 1933 provides for the creation of the "Home Owners' Loan Corporation," which it specifically declares "shall be an instrumentality of the United States." (12 U. S. C. A. p. 985, sec. 1463.) With

respect to that particular corporation, subdivision (c) of that section specifically exempts all of its property and assets, except real property, from taxation in the following language:

"The Corporation, including its franchise, its capital, reserves and surplus, and its loans and income, shall likewise be exempt from such taxation."

The following section, 1464 (12 U. S. C. A. p. 994), was enacted by Congress in 1934, authorizing the creation of Federal Savings and Loan Associations, as distinguished from the previously-mentioned Home Owners' Loan Corporation. It is declared that such a Federal Savings and Loan Association shall automatically become a member of the Federal Home Loan Bank of the particular district in which it is located. It is not stated that such *associations* shall become "instrumentalities of the United States," as it was specifically declared with respect to the Home Owners' Loan Corporation. Nor is it stated in section 1464, *supra*, as it was unqualifiedly declared in section 1463, that the corporation's property and assets are exempt from taxation. On the contrary, it is clearly inferred by the provisions of subdivision (h) of section 1464, that states are authorized to tax the income derived from such associations. It provides that:

"Such [savings and loan] associations, including their franchises, capital, reserves, and surplus, and their loans and income, shall be exempt from all taxation now or hereafter imposed by the United States . . . and all shares of such associations shall be exempt both as to their value and the income therefrom from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter *imposed by the United States;* and no state, Territorial, county, municipal, or local taxing authority shall impose any tax on such associations or their franchise, capital, reserves, surplus, loans, or income *greater than that imposed by such authority on other similar local mutual or cooperative thrift and home financing institutions."* (Italics added.)

It is not contended that the taxes which were imposed in the present action were greater than those which were levied upon similar thrift or home-financing institutions in California. It must be conceded that the taxes which are involved in this suit were computed in exact accord with the procedure which is followed in California with respect to other similar financial institutions.

Although the language of subdivision (h) of section 1464, with respect to state taxation of federal agencies is negative in form, its meaning is clear and unambiguous. We are of the opinion it constitutes federal authority for states to levy and collect franchise taxes from Federal Savings and Loan Associations, as agencies of the United States Government, doing business within such states, based upon their net incomes, provided the rate is not greater than that which is imposed upon other similar local mutual or cooperative thrift and home-financing institutions. That method is the precise manner in which the State of California computed the franchise taxes which were levied against the net income of the plaintiff association. There was no discrimination in fixing the taxes which are involved on this appeal. Our conclusion in regard to the authority for states to impose taxes upon the incomes of such federal agencies, furnishes the only reasonable construction of which the language of subdivision (h) of section 1464 is susceptible. ▊ Statutes should be construed, if possible, so as to give force and effect to all of the language employed therein. ▊ If Congress had not intended to authorize states to impose taxes upon the incomes of such federal agencies, it would have omitted the latter portion of that subdivision of the section entirely, and prohibited absolutely taxation of their properties by both the government and the states. The fact that the first portion of that paragraph specifically exempts the property of such associations from taxation "by the United States" and then separately prescribes the manner or extent to which state authorities may impose taxes thereon, furnishes conclusive evidence that Congress intended thereby to authorize states to tax the designated properties of such Federal Savings and Loan Associations. Our construction of the language of subdivision (h) of section 1464 is supported by the following recent decisions: *Texas Unemployment Compensation Comm.* v. *Metropolitan Bldg. & Loan Assoc.*, (Tex. Civ. App.) 139 S. W. (2d) 309; *First Federal Sav. & Loan Assoc.* v. *Loomis*, 97 Fed. (2d) 831 [121 A. L. R. 99].

▊ There is no merit in appellant's contention that it is exempt from taxation because the association does not hold a franchise from the State of California. It is alleged that plaintiff was duly granted a charter by the United States Government on July 10, 1934, and that it continued to operate thereunder, in the State of California, by virtue of the provi-

sions of the Home Owners' Loan Act of 1933. It is not necessary for banks or savings and loan associations to hold franchises issued by the State of California to make them liable for taxes under article XIII, section 16, of the Constitution or the legislative enabling act of 1929. These laws provide that banks, including national banking associations, "located within the limits of this state" shall be liable for the taxes. The law imposes the taxes upon all franchises whether they be national or local in character. (See *Matson Navigation Co.* v. *State Board of Equalization*, 3 Cal. (2d) 1, 6 [43 Pac. (2d) 805] ; *Butler Bros.* v. *McColgan*, 17 Cal. (2d) 664 [111 Pac. (2d) 334].) The case of *People* v. *Alaska Pacific Steamship Co.*, 182 Cal. 202 [187 Pac. 742], relied upon by the appellant to support its contention that it is exempt from taxes because it holds no franchise from the State of California, contains no language in conflict with what we have previously said in that regard.

Nor is there merit in appellant's assertion that the levy is void because the State of California failed to take advantage of the authorization conferred by the Federal Savings and Loan Association Act of 1934 to tax its franchise and income by thereafter enacting a statute to that effect. The California statute of 1929, in accordance with article XIII, section 16, of the Constitution, is sufficiently broad and comprehensive to include the power to tax the franchise and net income of the plaintiff as a savings and loan association. Indeed, the law authorizes the taxing of all "banks, including national banking associations, located within the limits of this state" and all "financial, mercantile, manufacturing and business corporations." Certainly the plaintiff is a financial institution. The law clearly authorizes the taxing of all named industries which were doing business in the State of California at the time the statute was enacted, and also all such associations and institutions which may thereafter conduct their businesses within the borders of the state, regardless of when they were created or organized.

Finally, the appellant contends that even if the Federal Savings and Loan Association Act does authorize the taxing of franchises and net incomes, to some extent, "they nevertheless do not have power to tax plaintiff on its entire net income, but must of necessity be limited in its taxation to that portion of plaintiff's income which is derived from the use of locally invested funds, and defendants have no power

whatsoever to levy, assess and collect any tax from that portion of plaintiff's net income derived from the investment of funds invested with plaintiff by the Federal government."

We cannot agree with that construction of the federal statute. No such limitation is placed upon the taxing power of the states by the provisions of subdivision (h) of section 1464. It authorizes the state to tax all incomes of such associations. That provision contemplates the taxing of all such associations or their franchises, capital, reserves, surplus, loans *or income* to an extent not "greater than that imposed by such authority on other similar local mutual or cooperative thrift and home financing institutions." This absence of a limitation leaves the clear inference that the entire income is taxable and that the portion which is derived from loans of funds invested by the federal government is not exempt. If Congress had intended to exempt the income derived from that source it would have so stated. The Supreme Court of the United States, in the case of *Tradesmens National Bank of Oklahoma City* v. *Oklahoma Tax Comm.*, 309 U. S. 560 [60 S. Ct. 688, 84 L. Ed. 947], determined that the State of Oklahoma was authorized under the National Bank Act (12 U. S. C. A. 604, sec. 548) to levy and collect franchise taxes on the entire net assets or income of the bank, notwithstanding the fact that it included therein tax-exempt federal securities. The syllabus in that case correctly announces the decision of the court in that regard as follows: "A state has power to levy on a franchise a tax measured by net assets or net income, including tax-exempt Federal instrumentalities or their income." Section 548, *supra*, which was involved in that case, authorized states to "tax such associations *on their net income.*" It then provides, similar to section 1464, that such taxation on net incomes shall not discriminate against the banks, but must be computed in the same manner and not higher than the franchise taxes which are imposed upon "other financial corporations nor higher than the highest of the rates assessed by the taxing State upon mercantile, manufacturing, and business corporations doing business within its limits." It will be observed that the language of section 548 is quite similar to the language of subdivision (h) of section 1464 in that regard. It follows that the principle which was involved in the Oklahoma case, *supra*, is determinative of that issue in this case. To the same effect is the case of *Pacific Company, Ltd.* v. *Johnson* (Calif.), 285 U. S. 480 [52 S. Ct. 424, 76 L. Ed. 893].

We are satisfied the portion of the net income of the plaintiff association, which was derived from funds furnished by the federal government is not exempt from the franchise tax imposed by the State of California in this case.

The judgment is affirmed.

Steel, J. pro tem., and Tuttle, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 30, 1942.