**PEOPLE OF STATE OF CALIFORNIA et al. v. COAST FEDERAL SAV. & LOAN ASS'N.**

Civ. A. 10528–C.

United States District Court
S. D. California, C. D.

June 21, 1951.

Edmund G. Brown, Atty. Gen., Walter L. Bowers, Asst. Atty. Gen., Bayard Rhone, Deputy Atty. Gen., for plaintiffs.

Crail & Crail, Los Angeles, Cal. (Harry G. McMahon, Los Angeles, Cal., of counsel), and Frank P. Doherty, Los Angeles, Cal., for defendant.

Newell A. Clapp, Acting Asst. Atty. Gen., Ernest A. Tolin, U. S. Atty., Clyde C. Downing, Asst. U. S. Atty., and Reuben Rosensweig, Asst. U. S. Atty., all of Los Angeles, Cal. (Edward H. Hickey and Hubert H. Margolies, Attys., Department of Justice, Washington, D. C., and Kenneth G. Heisler, General Counsel, and William F. McKenna, Asst. General Counsel, Home Loan Bank Board, Washington, D. C., of counsel), for United States, as amicus curiae.

Sheppard, Mullin, Richter & Balthis, Los Angeles, Cal. (Frank S. Balthis Jr. and James C. Sheppard, Los Angeles, Cal.,

of counsel), for the California Sav. & Loan League, as amicus curiae.

JAMES M. CARTER, District Judge.

This is an action for injunction and recovery of statutory penalties, in which the plaintiffs contend that defendant, a Federal savings and loan association, solicited and received deposits, representing itself to be a banking institution, and transacted its business in the manner of a savings bank, in violation of California state statutes and without authority.[1]

The action was commenced in the State court and removed to the District Court. Due to the importance of the questions involved, leave was granted to the United States and to The California Savings & Loan League to appear as *amici curiae*.

### The Facts

Defendant was chartered by the Home Loan Bank Board (hereafter referred to as the Board) under Sec. 5(a) of the Home Owners' Loan Act of 1933, as amended, Sec. 1464(a), Title 12 U.S.C.A., its principal place of business being in Los Angeles. It has not received a certificate from the State Superintendent of Banks (hereafter referred to as the Superintendent) to do a banking business, nor has it been authorized by the United States to transact business as a National Bank.

Defendant issued but two types of accounts: an "investment share account," in multiples of $100, and a "savings share account," in any amount. Under normal conditions,[2] holders of savings share accounts may add to or withdraw funds from the account, at will. Every person opening an account is issued a membership certificate and becomes a member of defendant, entitled to one vote at all membership meetings for every $100 or fraction, on deposit, with a maximum of 50 votes. Each holder of a savings share account is given a pass book. Subject to limitations

1. Sec. 102, Banking Code (formerly Sec. 2, Act 652, Calif.Gen.Laws), defines the word "bank" as any incorporated banking institution which shall have been incorporated to conduct the business of receiving money on deposit; "the soliciting, receiving, or accepting of money or its equivalent on deposit as a regular business shall be deemed to be doing a commercial or savings bank business whether such deposit is made subject to check or is evidenced by a certificate of deposit, a passbook, a note, a receipt, or other writing * * *. It shall be unlawful for any corporation * * * to engage in or transact a banking business within this State except by means of a corporation duly organized for such purpose."

Sec. 3390, Banking Code (formerly part of Sec. 12, Act 652) provides that no person, without prior authority of the superintendent shall solicit or receive deposits "or transact business in the way or manner of a commercial (or) savings bank".

Sec. 3391, Banking Code (formerly part of Sec. 12, Act 652) provides that no person, unless authorized by the Superintendent to engage in the banking business, shall use words in any advertisement or sign indicating that it receives deposits or that such business is the business of a commercial or savings bank, or, without express statutory authority, transact business in any manner as to lead the public to believe that its business is that of a bank.

Sec. 3393, Banking Code (formerly part of Sec. 12, Act 652): "Any building and loan association may issue shares and investment certificates and do such other business as may be authorized by the laws of the State relating to building and loan associations, but no building and loan association shall advertise or hold itself out to the public as a savings bank."

Sec. 3395, Banking Code (formerly part of Sec. 12, Act 652): "Any person * * * violating any provision of the foregoing sections * * * shall be liable to the people of the State in the amount of one hundred dollars ($100) a day * * * during which such violation continues. Any court of competent jurisdiction in a proceeding brought by the superintendent may enjoin any person from using words * * * or from transacting business in violation of this code or in such * * * manner as to lead the public to believe that its business is that of a bank, commercial bank (or) savings bank".

2. Sec. 11 of the defendant's charter concerning "Redemption" and Sec. 12 concerning "Repurchase" contain standard provisions which a Federal Savings and Loan Association *may* insist on in connection with withdrawals.

prescribed by the Home Loan Bank Board, defendant's directors fix the dividend rate, semiannually, to apply for the next succeeding half year; otherwise the association does not agree to pay a fixed rate of earnings upon its accounts.

The charter of defendant, implemented by rules and regulations of the Board, expressly authorizes defendant to make loans on homes, within prescribed limits, if secured by a first lien; each such borrower becomes a member of defendant, with the right to cast one vote at membership meetings.

No evidence was offered which would support a finding that defendant was actually transacting its business other than strictly within the limited perimeter of its expressly authorized field. The gravamen of the complaint is that through signs and other means of advertising, defendant has transacted business in the manner of a bank and has held itself out as a bank or savings bank, and has led the public to believe that it was such a bank, without authority and in violation of state statutes. Plaintiffs further allege that defendant, unless restrained, will continue such advertising, and seek injunctive relief, as well as recovery of the $100-a-day statutory penalty.

In its various types of advertising, defendant uses a part of its corporate name, viz: "Coast Federal Savings". It uses such phrases as "Your savings account opened by the 10th earns interest from the 1st," "Open your Coast Federal Savings account, now," "Place your savings at Coast Federal," and "You can get your money when you want it."

Through emphasis upon certain words used in adjoining window signs, the very myopic would read, from a distance, "Coast Federal Savings Bank."[3] Supervisory personnel of the Board saw such signs frequently. They were removed at the request of the Board about seven months before this action was commenced, but only after the Board received complaints, including those of the Superintendent. Thereafter, defendant's signs recited that it was a "Member of Federal Home Loan Bank," without emphasizing the word "bank."

In 1938, and prior to the time when, as alleged in the complaint, defendant commenced to use the advertising methods complained of, the Federal Savings and Loan Insurance Corporation (a federal instrumentality which insures deposits at Federal Savings and Loan Associations) published a handbook[4] dealing with approved and recommended advertising by insured institutions, including federal savings and loan associations. The handbook approved the use of such phrases as "Accounts Federally Insured," "Insured savings accounts," "Save where savings are insured" and "Availability of funds." It stated that earnings distributed should be referred to as "dividends" and not as "interest." One of the advertisements used by the defendant stated "earns interest from the 1st." This statement was not within the letter or spirit of one of the regulations.[5]

At no time did plaintiffs request or petition the Board for a hearing or other administrative action concerning the defendant, with the exception of the informal

3. Four adjoining windows bore the following signs, respectively: "Coast Federal," "Federal insurance," "Savings accounts," and "Member of Federal Home Loan Bank;" the emphasized words appeared in much larger lettering, either above or below the other word or words on each window.

4. "Suggestions for Federal Savings and Loan Association in giving information to the public."

5. Sec. 161.7(e): Regulations Relating to Housing and Housing Credit, 24 C.F.R.

1949 Ed., Sec. 161.7(e) No association shall use advertising (whether printed, radio, display or of any other nature), or make any representation which is inaccurate in any particular, or which in any way misrepresents its services, contracts, investments or financial condition. [The Board, by Sec. 141.5 of its Regulations incorporated by reference various matters published in the Federal Register, concerning the management, supervision and control of federal savings and loan associations.]

complaints, above mentioned, as to the signs.

The answer asserts that (1) the complaint fails to state a justiciable claim; (2) the state statutes relied upon by plain-. tiffs are inapplicable; (3) defendant is an instrumentality and agency of the United States; (4) its acts were done by virtue of and under the authority of the United States; (5) plaintiffs have not resorted to or exhausted administrative remedies provided by the rules and regulations of the Board; and (6) the public has not been misled. Additionally, defendant and *amici curiae* urge that (7) primary jurisdiction lies with the Home Loan Bank Board, (8) the state courts did not have jurisdiction over the subject matter of this action, and, finally, (9) that this court is likewise without such jurisdiction.

The Questions For Determination

Four questions are presented: (1) whether primary jurisdiction over the subject matter lies with the Home Loan Bank Board, or in the state courts; (2) the effect of the failure of plaintiffs to exhaust administrative remedies; (3) if the state court was without jurisdiction over the subject matter, whether this court is also without jurisdiction thereof; finally, (4) whether the state regulatory statutes which plaintiffs seek to invoke, are valid.

The Law

I

◼ Defendant is a Federal savings and loan association, organized and chartered by the Home Loan Bank Board. Sec. 5, Home Owners' Loan Act of 1933, as amended, Sec. 1464, Title 12 U.S.C.A. It is conceded that such an association is an instrumentality and agency of the United States.[6]

◼ Federal savings and loan associations are created "to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes". Sec. 1464(a),

Ibid. The Board issues charters for these associations, "giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States." Sec. 1464(a), Ibid. North Arlington Nat. Bank v. Kearney Fed. Sav. & Loan Ass'n, 3 Cir., 1951, 187 F.2d 564.

◼ Congress expressly delegated the duty and authority to the Board to make policy, including the power to make rules and regulations for the organization, incorporation, examination, operation, supervision and regulation of such associations, which delegation of authority is constitutional. Fahey v. Mallonee, 1947, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030. No provision is made for sharing the Board's delegated authority with state regulatory or supervisory agencies. North Arlington Nat. Bank v. Kearney Fed. Sav. & Loan Ass'n, supra. First Fed. Sav. & Loan Ass'n v. Loomis, infra, note 4.

◼ The Board has adopted comprehensive rules and regulations concerning the powers and operations of every Federal savings and loan association from its cradle to its corporate grave. Title 24, Code of Federal Regulations, 1949 Ed. Ch. I, sub-chapter C, published under authority of Secs. 311(d) and 311(a), Title 44 U.S.C.A. and Ex.O.No.9931, Feb. 4, 1948, 13 F.R. 519. These rules and regulations have the force and effect of law, and are noticed judicially. Secs. 301–314, Title 44 U.S.C.A.; Community Fed. Sav. & Loan Ass'n v. Fields, 8 Cir., 1942, 128 F.2d 705; Home Owners' Loan Corp. v. Gordon, 1939, 36 Cal.App.2d 189, 97 P.2d 845; Standard Oil Co. of California v. U. S., 9 Cir., 1939, 107 F.2d 402.

Sec. 142.2 of the Regulations, 14 F.R. 5664, provides, in part: "The Board may order a hearing in connection with the consideration of any matter arising under any provision of the rules and regulations * * * whether or not any request there-

6. The concession must be made. Federal Savings & Loan Ins. Corp. v. Kearney Trust Co., 8 Cir., 151 F.2d 720. First Fed. Sav. & Loan Ass'n v. Danaher, 1941, 128 Conn. 78, 20 A.2d 455, 463–464;

State v. Minnesota Fed. Sav. & Loan Assn., 1944, 218 Minn. 229, 15 N.W.2d 568; First Fed. Sav. & Loan Ass'n v. Loomis, 7 Cir., 97 F.2d 831, 121 A.L.R. 99.

for has been made by any person." The Board, in adopting that section, expressly found that its adoption would tend "to expedite the public business and simplify the operation of the regulations." F.R.Doc. 49–7437, Sept. 14, 1949. (24 C.F.R., 1949, Supp., 142.2)

■ Sec. 146.1 authorizes the Board to appoint a conservator or receiver for a Federal savings and loan association if the Board finds that the association is conducting its business in an unlawful or unauthorized manner, is pursuing a course that is jeopardizing or injurious to the interests of its members, or the public, or has refused or failed to observe a lawful order of the Board. It is clear that if the Board determines that defendant's advertising methods violate Sec. 161.7(e) (note 3 herein) or that it is carrying on the business of a bank, it has plenary power to correct any improper or unlawful practices. Sec. 1464(a), Title 12 U.S.C.A. The functions and powers of the Board do not end with the promulgation of rules. Sec. 1464(b), Ibid.

■ It is held in Trans-Pacific Airlines v. Hawaiian Airlines, 9 Cir., 1949, 174 F.2d 63, at page 66, that where uniformity of interpretation of rules and consistency in application, in view of an over-all policy, is compelled by legislative mandate, then primary jurisdiction is in the administrative body and not in the courts. Aircraft & Diesel Equipt. Corp. v. Hirsch, 1947, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796.[7]

■ We hold that the Home Loan Bank Board had and still has primary jurisdiction over the subject matter of this action.

## II

■ The doctrine is also well settled that no one is entitled to judicial relief until available administrative remedies have been exhausted.

■ As stated by the late Justice Rutledge, in Aircraft & Diesel Equipt. Corp. v. Hirsch, 1947, 331 U.S. 752, at page 767, 67 S.Ct. 1493, 1500, the doctrine of exhaustion of administrative remedies is one "of pursuing them to their appropriate conclusion and, correlatively, of awaiting their final outcome before seeking judicial intervention.

"The very purpose of providing either an exclusive or an initial and preliminary administrative determination is to secure the administrative judgment either, in the one case, in substitution for judicial decision or, in the other, as foundation for or perchance to make unnecessary later judicial proceedings."

■ The courts should not assume in advance that an administrative hearing will not be fairly conducted. Fahey v. Mallonee, supra. The doctrine cannot be circumvented by asserting that the Board lacks power or jurisdiction over the subject matter, since no one is entitled to judicial relief for a supposed or threatened injury until all available administrative remedies are actually exhausted. Myers v. Bethlehem Shipbuilding Co. 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Gates v. Woods, 4 Cir., 1948, 169 F.2d 440, 442–443.

■ The courts are not charged with general guardianship against all potential mischief in the complicated tasks of government. Congress, which creates and sustains federal administrative agencies must be trusted to correct whatever defects experience may reveal. Interference by the courts with administrative remedies and their exhaustion is not conducive to the development of habits of responsibility in administrative agencies. F.C.C. v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 146, 60 S.Ct. 437, 443, 84 L.Ed. 656; Hart v. Landis, 1951, 103 Cal.App.2d ——, 229 P.2d 380.

■ Congress need not supply an administrative agency with a specific formula for its guidance in a field, as here, where flexibility and the adaptation, by the Home Loan Bank Board, of the policy of Congress to infinitely variable conditions,

7. See also, "Doctrine of Primary Administrative Jurisdiction," 42 Am.Jur. 698, Sec. 254, et seq.

constitute the essence of the program. Lichter v. U. S., 1948, 334 U.S. 742, 785, 68 S.Ct. 1294, 1316, 92 L.Ed. 1694; Mallonee v. Fahey, supra; Sec. 1464, Title 12 U.S.C.A.; Trans-Pacific Airlines v. Hawaiian Airlines, 9 Cir., supra.

■ It is also clear that this court lacks power to grant injunctive relief for a supposed or threatened injury before administrative remedies have been exhausted. Mallonee v. Fahey, supra. Macauley v. Waterman S. S. Co., 1946, 327 U.S. 540, 543–544, 66 S.Ct. 712, 714, 90 L.Ed. 839.

■ Likewise, whether or not plaintiffs have a right to judicial review, after exhausting administrative remedies, is a matter with which this court is not presently concerned. Fahey v. Mallonee, supra.[8]

■ Finally, whether or not there exists a legal impediment of an administrative nature to the exercise of jurisdiction by the Board, is an issue, primarily, for the Board's determination, which is not subject to review until final action is taken by it. D. G. Bland Lbr. Co. v. N. L. R. B., 5 Cir. 1949, 177 F.2d 555.

■ We hold that the state court had no jurisdiction of the subject matter.

### III

■ If, as we have held, the state court was without jurisdiction of the subject matter, then the District Court could not acquire jurisdiction by the removal. Lambert Run Coal Co. v. Baltimore & O. Ry. Co., 1922, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671; Freeman v. Bee Machine Co., 1943, 319 U.S. 448, 449, 63 S.Ct. 1146, 1147, 87 L.Ed. 1509; Minnesota v. U.S., 1939, 305 U.S. 382, 389, 59 S.Ct. 292, 295, 83 L.Ed. 235.

### IV

■ In Bethlehem Steel Co. v. New York State Labor Relations Board, 1947, 330 U.S. 767, 773, 774, 67 S.Ct. 1026, 1030, 91 L.Ed. 1234, the Court states: "When Congress has outlined its policy in rather general and inclusive terms and delegated determination of their specific application to an administrative tribunal, the mere fact of delegation of power to deal with the general matter, without agency action, might preclude any state action if it is clear that Congress has intended no regulation except its own. [Case cited.] In other cases, Congress has passed statutes which initiate regulation of certain activities, but where effective regulation must wait upon the issuance of rules by an administrative body. In the interval before those rules are established, this Court has usually held that the police power of the state may be exercised. [Cases cited.] But when federal administration has made comprehensive regulations effectively governing the subject matter of the statute, the Court has said that a state regulation in the field of the statute is invalid even though that particular phase of the subject has not been taken up by the federal agency." Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Wisconsin, Employment Relations Bd., 340 U.S. 383, 71 S.Ct. 359.

■ Not only does the act of Congress which authorized the creation, operation and supervision of federal savings and loan associations by the Home Loan Bank Board, embrace the entire field, but the comprehensive rules and regulations adopted by the Board clearly meet the test of covering the subject matter of the statute. Congress has the power to protect the instrumentalities which it has created. U. S. Constitution, Art. I, sec. 8, cl. 18, U.S.C.A. Federal Land Bank v. Bismarck Lbr. Co., 1941, 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65. It seems clear that Congress has preempted the field, making invalid the state statutes plaintiffs rely upon (note 1) when attempted to be invoked against a Federal savings and loan association. U. S. Constitution, Art. VI, cl. 2, U.S.C.A. First Fed. Sav. & Loan Ass'n v. Martin, supra.

8. See Willapoint Oysters, Inc., v. Ewing, 9 Cir., 174 F.2d 676, certiorari denied 338 U.S. 860, 70 S.Ct. 101, rehearing denied 339 U.S. 945, 70 S.Ct. 793; and Sec. 1009, Title 5 U.S.C.A.

Plaintiffs point to decisions [9] holding that although Federal savings and loan associations are instrumentalities of the United States, they are not exempt from state taxation, and urge that the courts have thereby recognized that such associations are subject to regulatory state statutes. However, Sec. 1464(h) Title 12 U.S.C.A. expressly permits state taxation so long as the tax imposed is not "greater than that imposed by such authority on other similar local mutual or cooperative thrift and home financing institutions."

The further contention is made that federal instrumentalities are subject to state laws unless those laws infringe on the national law or upon the functions of the agency, and rely upon decisions concerning National banks, principally Anderson Nat'l Bank v. Luckett, 1944, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692. The cited decision held, in effect, that a state statute relating to escheat of inactive accounts was valid, since it concerned the debtor-creditor relationship of a bank with its depositors, and national law had not attempted to enter that field.

As stated in Eddy v. Home Federal Sav. & Loan Ass'n, 60 Cal.App.2d 42, 140 P.2d 156, 158: "Further, a building and loan association organized under the Home Owners Loan Act is not a national bank and the powers and duties of the two materially differ." As to national banks, Congress expressly left open a field for state regulation and the application of state laws; but as to federal savings and loan associations, Congress made plenary, preemptive delegation to the Board to organize, incorporate, supervise and regulate, leaving no field for state supervision.[10]

Independent research discloses a decision by an intermediary appellate state court which seems to support the contentions of plaintiffs. In re Baldwinsville Federal Sav. & Loan Ass'n, 1944, 268 App.Div. 414, 1024, 51 N.Y.S.2d 816. The court there held that a state statute, providing a summary remedy for the determination of the validity of an election of directors was valid as not interfering with the purposes of the creation of the association, destroying its efficiency or conflicting with paramount federal law.[11] The court found that the association was a domestic corporation, and hence amenable to state law.[12] As said by that court, on page 819, 51 N.Y.S.2d: "The record does not disclose whether any rules, or regulations, other than the charter, were prescribed for this association by the Board." But under Rules 148.1 and 149.2, if the Board found that an election of directors was held contrary to the prescribed by-laws of an association and Roberts' Rules of Order, it could appoint a conservator, although the association was financially sound, and order a new election, to be supervised by a representative of the Board. Nor did the New York court mention the doctrine of exhaustion of administrative remedies.

The Baldwinsville case, which we decline to follow, illustrates the "disparities, confusions and conflicts which would follow if the Government's general authority were subject to local controls." U. S. v. Allegheny County, 1944, 322 U.S. 174, at page 183, 64 S.Ct. 908, at page 913, 88 L.Ed. 1209. The congressional mandate for uniformity would be destroyed if these associations were subject to federal control, plus concurrent state control, which latter control might vary in every one of the forty-eight states.

To put it charitably, the Board may have been lackadaisical in the exercise of its plenary powers but this does not, *per se*, breathe validity into state regulatory stat-

9. State v. Minnesota Fed. Sav. & Loan Ass'n, 218 Minn. 229, 15 N.W.2d 568, 573; First Fed. Sav. & Loan Ass'n v. Danaher, supra; First Fed. Sav. & Loan Ass'n v. Johnson, 1942, 49 Cal. App.2d 465, 122 P.2d 84.

10. See Deering's Cal.Gen.Laws, Act 986, Secs. 1.02 and 12.11, 3d par., and Act 988, which exclude Federal savings and loan associations from control by the State Building and Loan Commissioner.

11. The New York statute is similar to Secs. 2236–2238, California Corporations Code.

12. Civil Practice Act, § 7, subd. 7: "A 'domestic corporation' is a corporation created by or under the laws of the state, or located in the state, and created by or under the laws of the United States". Defendant, here, is not a "domestic" corporation under the laws of California. Sec. 106, Corporations Code.

utes within a field preempted by the Federal government. Bethlehem Steel Co. v. State Labor Board, supra. The Board possesses the power to correct the matters complained of by the plaintiff by the enforcement of its own regulations.

We hold that the state statutes which plaintiffs seek to enforce are invalid, as applied to this defendant.

## V

Since the statutes upon which the complaint is based are invalid as applied to this defendant, a federal instrumentality, the complaint fails to state a claim upon which relief may be granted. We have also held that plaintiffs have not exhausted available administrative remedies, and that primary jurisdiction of the subject matter is in the Home Loan Bank Board. Likewise, we have held that the state court had no jurisdiction over the subject matter of the action, and, hence, this court has none. Under all the circumstances, the action should be dismissed. Aircraft & Diesel Equipt. Corp. v. Hirsch, supra. Armour & Co. v. Alton Ry. Co., 1941, 312 U.S. 195, 61 S.Ct. 498, 85 L.Ed. 771; Jones v. Brush, 9 Cir., 1944, 143 F.2d 733.

Defendant will prepare a judgment of dismissal, within the time provided by the rules of this court. Such judgment shall be without prejudice to the right of plaintiffs to pursue and exhaust administrative remedies.