WINCHESTER ET AL., APPELLEES, *v.* PORTERFIELD, TAX COMMR., APPELLANT.

(No. 70-669—Decided July 7, 1971.)

Mr. *William J. Brown*, attorney general, and Mr. *David S. Bloomfield*, for appellant.
Mr. *Leonard J. Winchester, in propria persona.*

SCHNEIDER, J. Taxpayer, an Ohio resident during the tax years in question, was the depositor of funds in the Pasadena Federal Savings and Loan Association, located in California and incorporated under and operated pursuant to Chapter 12, Title 12, U. S. Code (12 U. S. Code, Section 1461 *et seq.*). Whether his deposits were evidenced by certificates, passbooks or otherwise is not clear from the record or the arguments. It is agreed, however, that they yielded interest of over four per cent of the principal thereof in each year in question.

The Tax Commissioner assessed the intangible tax against him in an amount equal to five per cent of the interest paid in each year from the deposit upon the basis that that interest was income yield from an "investment."

Upon appeal to the Board of Tax Appeals, the tax-

payer claimed that the deposits were issued by an instrumentality of the federal government and thus excepted from Ohio taxation as an investment (under the Ohio statutory tax scheme, these deposits would thus escape state taxation entirely); and that taxation of his deposits discriminates against out-of-state deposits by an Ohio domiciliary in federal savings and loan associations.

The Board of Tax Appeals agreed with the taxpayer's first contention, but by clear implication rejected the second. Although taxpayer has not cross-appealed and has virtually abandoned the latter contention, we are constrained to observe that Ohio seeks to tax out-of-state deposits of its domiciliarys yielding "annual income by way of interest or dividends in excess of four per cent" without regard to the source of the income. Therefore, a charge of discrimination against federally chartered institutions is unfounded.

In support of his appeal, the Tax Commissioner first insists that if R. C. 5709.02[1], 5701.05[2] and

---

[1]Section 5709.02, Revised Code:

"All moneys, credits, investments, deposits, and other intangible property of persons residing in this state shall be subject to taxation, except as provided in this section or as otherwise provided or exempted in Title LVII [57] of the Revised Code; but the good will, license, or franchise of a business, whether granted by governmental authority or otherwise, shall not be considered property separate from the other property used in or growing out of such business. Property of the kinds mentioned in Section 5709.03 of the Revised Code, used in and arising out of business transacted in this state by or on behalf of a nonresident person, other than a foreign insurance company as defined in Section 5725.01 of the Revised Code, and nonwithdrawable shares of stock of financial institutions and dealers in intangibles located in this state and ownership interests of the depositors in incorporated financial institutions located in this state, the capital of which is not divided into shares, or which have no capital stock, as such ownership interests are defined in Sections 5725.04 and 5725.07 of the Revised Code, shall be subject to taxation; and all such property of persons residing in this state used in and arising out of business transacted outside of this state by or on behalf of such persons, and nonwithdrawable shares of stock of financial institutions located outside of this state and ownership interests of the depositors in incorporated financial institutions located outside of this state, the capital of which is not divided into shares, or which have no capital stock, as such owner-

124

5701.06[3] are construed *in para materia*, as they should be, it may be seen that the subject of the tax is the deposit in the out-of-state institution; and that a *deposit*, as distinguished from an *issue* of an evidence of indebtedness, in

ship interests are defined in Sections 5725.04 and 5725.07 of the Revised Code, belonging to persons residing in this state, shall not be subject to taxation. Such property subject to taxation shall be entered on the classified tax list and duplicate of taxable property, or on the intangible property tax list in the office of the Auditor of State and the duplicate thereof in the office of the Treasurer of State.

"A corporation shall not be required to list any of its investments in the stocks of any other corporation or in its own treasury stock."

[2]Section 5701.05, Revised Code:

"As used in Title LVII of the Revised Code, 'deposits' includes every deposit which the person owning, holding in trust, or having the beneficial interest therein is entitled to withdraw in money, whether on demand or not, and whether evidenced by commercial or checking account, certificate of deposit, savings account, certificates of running, or other withdrawable stock, or otherwise, excepting:

"(A) Unearned premiums and surrender values under policies of insurance;

"(B) Such deposits in financial institutions outside this state as yield annual income by way of interest or dividends in excess of four per cent of the principal sum so withdrawable."

[3]Section 5701.06, Revised Code:

"As used in Title LVII [57] of the Revised Code, 'investments' includes:

"(A) Shares of stock in corporations, associations, and joint-stock companies, under whatever laws organized or existing, excepting:

"(1) Those which are instrumentalities of the federal government for the taxation of which by the several states no provision is made by act of the Congress of the United States;

"(2) Those in financial institutions, dealers in intangibles, and domestic insurance companies as defined in Section 5725.01 of the Revised Code;

"(3) Those defined as deposits by Section 5701.05 of the Revised Code.

"(B) Interest-bearing obligations for the payment of money, such as bonds, certificates of indebtedness, debentures, and notes; certificates of deposit, savings, and other like deposits in financial institutions outside this state yielding income by way of interest or dividends in excess of four per cent of the principal sum withdrawable; and other similar evidences of indebtedness, whether negotiable or not, and whether or not secured by mortgage of or lien upon real or personal property or income, by whomsoever issued, excepting those issued;

a federally chartered or regulated financial institution is not excepted from the tax. He refers to Section 5323, General Code⁴ (114 Ohio Laws 714), as enacted in 1931, which is the antecedent of R. C. 5701.06 before the recodifi-

"(1) By the United States or any of its territories, districts, or dependencies;

"(2) By any instrumentality of the federal government;

"(3) Prior to January 1, 1913, by the state of Ohio or any political or other subdivision or school district in this state;

"(4) Pursuant to Section 2a of Article VIII, Ohio Constitution;

"(5) Which are defined in Sections 5701.05 and 5701.07 of the Revised Code as deposits and current accounts.

"(C) Annuities, royalties, and other contractual obligations for the periodical payment of money and other incorporeal rights of a pecuniary nature from which income is or may be derived, however evidenced, excepting:

"(1) Interests in land and rents and royalties derived therefrom, other than equitable interests divided into shares evidenced by transferable certificates;

"(2) Contracts of employment or partnership, salaries, wages, commissions, seniority and other incorporeal rights derived from any such contract, and retirement annuities or plans that result from contracts of employment;

"(3) Contracts of insurance, and dividends paid or applied thereunder; but dividends under contracts commonly known as 'combination life and annuity policies' or 'cash refund annuities' shall not be excluded from taxation;

"(4) Stock purchase, pension, or profit-sharing plans established by an employer for the benefit of his employees or those of his subsidiaries;

"(5) Ownership interests of the depositors in an incorporated financial institution, the capital of which is not divided into shares, or which has no capital stock, as such ownership interests are defined in Sections 5725.04 and 5725.07 of the Revised Code.

"(D) All equitable interests, life or other limited estates, and annuity interests in any investment described in this section, or in any fund made up in whole or in part of any such investments, wherever located."

'Section 5323, General Code:

"The term 'investments' as used in this title, includes the following:

"Shares of stock in corporations, associations and joint stock companies, under whatever laws organized or existing, excepting (1) those in such corporations and associations as constitute instrumentalities of the federal government for the taxation of which by the several states no provision is made by act of the Congress of the United States, (2)

cation of 1953 (H. B. 1, 101st General Assembly), as authoritative of the legislative intent, in that the language employed in the General Code, "excepting such as have been issued," is apposite to the recodification language, "excepting those issued. . . ."

This argument is insubstantial. It gainsays the commonly known fact that for every deposit in a financial in-

those in financial institutions, dealers in intangibles and domestic insurance companies as defined by chapter four of this title, and (3) such as are defined in this chapter as 'deposits.'

"Interest bearing obligations for the payment of money, such as bonds, certificates of indebtedness, debentures and notes; certificates of deposit, savings and other like deposits in financial institutions outside of this state yielding income by way of interest or dividends in excess of four per centum of the principal sum withdrawable; and other similar evidences of indebtedness, whether negotiable or not, and whether or not secured by mortgage of or lien upon real or personal property or income, by whomsoever issued, excepting such as have been issued (1) by the United States or any of its territories, districts, or dependencies, or (2) by any instrumentality of the federal government, or (3) prior to the first day of January, 1913, by the state of Ohio or any political or other subdivision or school district in this state and (4) bonds of the state of Ohio issued pursuant to Article VIII, Section 2a of the Constitution of Ohio, and (5) such as are defined in this chapter as 'deposits' and 'current accounts.'

"Annuities, royalties and other contractual obligations for the periodical payment of money and all contractual and other incorporeal rights of a pecuniary nature whatsoever from which income is or may be derived, however evidenced, excepting (1) interests in land and rents and royalties derived therefrom, other than equitable interests divided into shares evidenced by transferable certificates, (2) contracts of employment or partnership and salaries, wages, commissions, seniority and other incorporeal rights derived from any such contract and retirement annuities or plans that result from contracts of employment, (3) contracts of insurance and dividends paid or applied thereunder; but the foregoing language shall not be construed to exclude from taxation dividends under contracts commonly known as 'combination life and annuity policies' or 'cash refund annuities,' and (4) stock purchase plans, pension or profit-sharing plans established by an employer for the benefit of his employees or the employees of subsidiaries if an employer.

"All equitable interests, life or other limited estates and annuity interests in any investment hereinbefore described, or in any fund made up in whole or in part of any such investments, wherever located."

stitution some evidence thereof is "issued." Moreover, the result of such construction would be to tax deposits in, but to exempt notes of, a federal instrumentality.

We will not impute to the legislative branch an intention to discriminate generally or to discriminate so narrowly.

Appellant's principal alternate contention is that a federal savings and loan association is not an instrumentality of the federal government within the meaning of R. C. 5701.06. We agree, and hold that the decision of the Board of Tax Appeals was unreasonable and unlawful.

First, we dispel any implication that this appeal involves a question of the constitutional immunity of the federal government or any of its agencies from state taxation. Appellee does not claim it. Nor does any brief or argument of appellant suggest it. Indeed, absent the language of subparagraph (B)(2) of R. C. 5701.06, there would be no question of Ohio's constitutional power to tax the subject of this appeal. See Section 1464(h), Title 12, U. S. Code,[6] which prohibits any state tax which discriminates against a federal association, thus impliedly granting the state power to tax upon the basis of similar treatment to similar local or state institutions.

Second, we dispel any notion that this appeal involves the question of discrimination in Ohio's scheme of taxation whereby an Ohio resident is taxed at a higher rate on a foreign deposit yielding over four per cent (five per cent on the annual yield) than on a domestic deposit yielding the same income (two mills on the principal deposited). The appellee does not raise the question.

The only authority cited by the board in support of its decision on the question of a federal instrumentality is *People* v. *Coast Federal Savings and Loan Assn.* (1951), 98

---

[6]Section 1464(h), Title 12, U. S. Code:

"No state, county, municipal, or local taxing authority shall impose any tax on such associations or their franchise, capital, reserves, surplus, loans, or income greater than that imposed by such authority on other similar local mutual or cooperative thrift and home financing institutions."

F. Supp. 311. In that case, the court did hold, *inter alia*, that the subject institution was an instrumentality and agency of the United States. But the case is not relevant to the present inquiry. It decided the inapplicability to a federal savings and loan association chartered pursuant to Section 1464 *et seq.*, Title 12, U. S. Code (Home Owners' Loan Act of 1933), of California statutes regulating banks and prohibiting certain advertising practices by banking institutions.

Similar inapplicable holdings with reference to state regulatory powers are to be found in *Ochs* v. *Washington Heights Federal Sav. and Loan Assn.* (1966), 17 N. Y. 2d 82; *Durnin* v. *Allentown Federal Savings and Loan Assn.* (1963), D. C. Pa. 218 F. Supp. 716; and *Springfield Institution for Savings* v. *Worcester Federal Sav. and Loan Assn.* (1952), 329 Mass. 184, 107 N. E. 2d 315.

The decision of the Supreme Court of Errors of Connecticut in *Waterbury Sav. Bank* v. *Danaher* (1941), 128 Conn. 78, 97, 20 A. 2d 455, is strongly relied upon by appellee and is highly persuasive of its conclusion that the term, "instrumentality of the United States," is used to describe a government agency which is immune from state control and therefore is not answerable to the "tax" imposed by the Connecticut Unemployment Compensation Act which excepts such an instrumentality from its provisions.

That court leans heavily on the premise that the Home Owners' Loan Act of 1933 (Section 1464 *et seq.*, Title 12, U. S. Code), under which federal savings and loan associations are chartered and exclusively regulated by the Federal Home Loan Bank Board, was adopted by Congress "to assist the government in providing for the general welfare by providing local thrift institutions in which people might invest and for financing homes." (128 Conn. 78, at 97.)

No doubt that was the purpose of the Act. It is so stated in paragraph (a) of Section 1464, Title 12, U. S. Code. The digressive flaw in the reasoning of the Connecticut court is, it seems to us, in its conclusion that federal savings and loan associations are *created* by that Act. Although the record is of little assistance to us, we are con-

vinced of the propriety of observing that which ought to be of the most common knowledge, namely, that federally chartered federal savings and loan associations are, in fact, created by private persons, capitalized in large part by private funds, and operated for the private profit of their shareholders, managers and depositors. Their exclusive regulation by the Federal Home Loan Bank Board does not distract from their private character. Indeed, in return for exclusive federal regulation and for their voluntary amenability to that regulation and to federal law, they receive such benefits as capitalization from the Homeowners Loan Corporation and deposit insurance from the Federal Savings and Loan Insurance Corporation. They are immune from the duplicating control of the states. It would appear to us, therefore, that a federal savings and loan association is "a beneficiary and not an instrumentality of the United States government," as the court characterized the Waterbury Savings Bank, a Connecticut chartered financial institution. (128 Conn. 78, at 89.)

In its emphasis upon the role of the federal savings and loan association in furthering the purposes and concerns of the federal government, the Connecticut court seems to deny the role of state-chartered savings and loan associations in furthering the legitimate interest of the several states in the promotion of thrift and in the financing of housing and the role which both types of associations play in furthering the interest of both the states and federal government.

We are, therefore, persuaded to accept the rationale of the New York Court of Appeals as expressed in *Liberty National Bank and Trust Co.* v. *Buscaglia* (1967), 21 N. Y. 357, 235 N. E. 2d 101, in which it was held that the fact that a federally chartered national bank was the depository for federal funds and was subject to federal regulation through membership in the federal reserve system, did not render the bank an instrumentality of the federal government and did not entitle it to the same immunity to state taxation that the federal government itself enjoyed.

A comparison of the Federal Home Loan Bank Act

(Section 1421 *et seq.*, Title 12, U. S. Code) with the Home Owners' Loan Act convinces us of the fallacy of imputing to the General Assembly an intention to discriminate in favor of federal savings and loan associations and against state savings and loan associations, which would be the result of the interpretation of the statute adopted by the Board of Tax Appeals. The former act was first adopted in 1932. It commanded the creation of the Federal Home Loan Board and of the several district home loan banks. It commanded control of the latter by the former. Without question, both agencies were created, funded, controlled and operated by the federal government in furtherance of its endeavors to promote housing and the general welfare. As such, they are, in the truest sense, instrumentalities of the federal government.

To us, therefore, it seems clear that the object of the General Assembly in enacting the antecedent of R. C. 5701.06 was to except, from the definition of "investments" for the purpose of Ohio taxation, the issued paper of institutions having characteristics similar to a federal home loan bank and the Federal Home Loan Board, and not the issued paper or other evidences of indebtedness of institutions having essentially private characteristics like those of federal savings and loan associations.

*Decision reversed.*

O'NEILL, C. J., HERBERT, DUNCAN, CORRIGAN, STERN and LEACH, JJ., concur.