**Raymond H. HAUGEN and Lois Haugen, Plaintiffs-Appellants,**

**v.**

**WESTERN FEDERAL SAVINGS & LOAN ASSOCIATION OF DENVER, Defendant-Appellee.**

**No. 80CA0551.**

Colorado Court of Appeals, Div. II.

April 30, 1981.

Rehearings Denied June 4, 1981.

Certiorari Granted Aug. 31, 1981.

Robert A. Lehman, Denver, for plaintiffs-appellants.

Janene B. Duthie, Robert V. Stailey, Denver, for defendant-appellee.

R. Dale Tooley, Denver Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, amicus curiae.

Joseph A. Davies, P. C., Joseph A. Davies, Denver, for amicus curiae F. A. I. R. Committee.

Calkins, Kramer, Grimshaw & Harring, Victor L. Wallace, II, James S. Bailey, Jr., Thomas T. Tornow, Denver, for amicus curiae Savings & Loan League of Colo., Inc.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sp. Asst. Atty. Gen., Sarah Scott Sammons, Asst. Atty. Gen., Denver, amicus curiae.

PIERCE, Judge.

Plaintiffs, Raymond H. and Lois Haugen, appeal from the entry of summary judgment in favor of defendant, Western Federal Savings and Loan Association (Western Federal). We affirm.

In 1977, Richard L. and Joyce Larson executed a promissory note for the benefit of the lender, Western Federal. This note was secured by a deed of trust encumbering a residence which is the subject of this action. The deed of trust contained a due-on-sale provision allowing Western Federal to accelerate the unpaid balance of the promissory note upon sale of the property.

On June 20, 1979, plaintiffs purchased the subject property from the Larsons. In lieu of executing the due-on-sale provision, Western Federal submitted to the closing agent conducting the property transfer an assumption and modification agreement which raised the interest rate on the as-

sumed mortgage from 8.75% to 11% per annum. Both plaintiffs and defendant signed this agreement.

On June 21, 1979, plaintiffs requested that the new interest rate be reduced to 9.75% to comply with § 38–30–165, C.R.S. 1973 (1980 Cum.Supp.), which prohibits a real estate lender from effecting an interest rate increase in excess of 1% per annum upon the sale or transfer of a residence.

Defendant refused to reduce the interest rate, asserting that as a federally chartered savings and loan association it was exempt from the cited Colorado statute insofar as that statute conflicted with federal regulations pertaining to interest rate increases on home mortgage assumptions.

The trial court held that since federal law preempted state law in the area of interest rate increases in federal loan agreements, defendant was not subject to the restrictions of § 38–30–165, C.R.S.1973 (1980 Cum. Supp.).

### I.

■ The doctrine of federal preemption, based on the supremacy clause of the constitution, prohibits the application of state laws which conflict with federal laws and regulations occupying the particular legislative field in question. *U.S.Const.*, Art. VI, cl. 2; *Kaski v. First Federal Savings & Loan Ass'n*, 72 Wis.2d 132, 240 N.W.2d 367 (1976); *Glendale Federal Savings & Loan Ass'n v. Fox*, 459 F.Supp. 903 (C.D.Cal. 1978).

The Home Owner's Loan Act of 1933, as amended, 12 U.S.C. § 1464(a) delegates to the Federal Home Loan Bank Board (Board) the power to supervise and regulate federal savings and loan associations. Thus, the relevant inquiry here is whether federal statutes or federal regulations enacted by the Board pursuant to 12 U.S.C. § 1464(a) preclude the application of Colorado's statutory 1% interest rate increase ceiling on mortgage assumptions to federally chartered savings and loan associations.

■ Plaintiffs insist that 12 U.S.C. § 1425 requires that federal lending institutions comply with "the lawful rate of interest" applicable to home loans and, hence, that no conflict exists between federal law and § 38–30–165(1)(b), C.R.S.1973 (1980 Cum.Supp.). We disagree.

12 U.S.C. § 1425 is intended to preserve the effectiveness of state usury laws in the regulation of federal savings and loan associations, and since § 38–30–165(1)(b) is not a usury law, 12 U.S.C. § 1425 is inapplicable to the instant case. *Dantus v. First Federal Savings & Loan Ass'n*, 502 F.Supp. 658 (D.Colo.1980) (appeal pending in 10th Cir.); *see* § 11–41–115(4), C.R.S.1973 (1980 Cum. Supp.) and § 18–15–104, C.R.S.1973.

### II.

■ Section 38–30–165(1)(b), C.R.S.1973 (1980 Cum.Supp.), prohibits any person with a security interest in real estate from directly or indirectly increasing the interest rate more than 1% per annum above the existing rate of the indebtedness on account of the assumption of such indebtedness. Pertinent federal regulations provide that a federal savings and loan association:

"waives its option to exercise a due on sale clause as to a specific transfer if, before the transfer, the association and the person to whom the property is to be sold or transferred ... agree in writing that the person's credit is satisfactory to the association and that *interest on sums secured by the association's security interest will be payable at a rate the association shall request.*" 12 C.F.R. § 545.8–3(g)(3), (emphasis added). *See also* 12 C.F.R. § 556.9(c) and (d).

We agree with the rationale set forth in *Dantus v. First Federal, supra,* that where, as here, a federally chartered savings and loan association requests a rate which exceeds 1% of the existing rate, it is in compliance with federal law, but is in violation of state law. Hence, § 38–30–165(1)(b), C.R.S. 1973 (1980 Cum.Supp.) conflicts with federal law governing interest rate increases as applied to federal lending institutions. *Dantus v. First Federal, supra.*

The trial court therefore did not err in holding that the federal preemption doctrine precluded the application to defendant of the Colorado interest rate ceiling upon plaintiffs' assumption of the Larsons' indebtedness. *See Dantus v. First Federal, supra; Kaski v. First Federal, supra.*

Judgment affirmed.

KELLY and KIRSHBAUM, JJ., concur.