OPINION OF THE COURT
Frederick B. Bryant, J.
The plaintiff has moved pursuant to CPLR 3212 for an order striking defendants’ answers and directing the entry of summary judgment for plaintiff in this action to foreclose its mortgage executed by the defendants Albert J. Jenkins and Pamela Jenkins.
The plaintiff, First Federal Savings and Loan Association of Rochester (hereafter sometimes referred to as lender) is a savings and loan corporation organized and existing under the laws of the United States of America. *716 The plaintiff brought this action to foreclose its mortgage on property designated by street number as 200 Pennsylvania Avenue, Ithaca, New York, executed by the defendants Albert J. Jenkins and Pamela L. Jenkins (hereafter Jenkins).
On May 12, 1978 the plaintiff loaned the defendants Jenkins $32,900. To secure this loan the Jenkins executed and delivered to plaintiff their note and mortgage bearing the same date in like amount and payable with interest on the unpaid principal at the rate of 8Y2% per annum in monthly installments of $264.93 on the first day of each month commencing on July 1, 1978, with the remaining indebtedness, if not sooner paid, to become due and payable on June 1, 2003. The mortgage recites that, “This is a purchase money mortgage”.
The mortgage contains in paragraph 17 a provision frequently referred to as a “due-on-sale clause”, reading as follows:
“17. Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender’s prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender’s option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower’s successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and the Note.
*717 “If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof.”
In its complaint plaintiff alleges in substance that the defendants Jenkins sold the mortgaged premises without the plaintiff’s prior written consent; that pursuant to said “due-on-sale” provision in said paragraph 17 the plaintiff elected to declare due the entire principal and interest of said note and mortgage, and there is now due and unpaid thereon the principal sum of $32,217.46 with interest thereon at the rate of 8/2% per annum from February 1, 1980.
The defendants Jenkins and Mooney have appeared by separate counsel and have served answers in which they deny, in substance, any defaults in complying with the terms and conditions of the note and mortgage. The defendants Jenkins also allege as affirmative defenses (1) that the plaintiff’s contract with them is unconscionable and that paragraph 17 of the mortgage which requires the written consent of the lender prior to sale of the mortgage premises or any part thereof “should not be enforced or so limited in its application as to avoid any unconscionable result” and (2) that “the contract set forth in the complaint is in restraint of trade, illegal, contrary to public policy and void”.
The defendants Richard J. Mooney and Maureen Gi Mooney (hereafter the Mooneys) also allege, in substance, as to two separate and complete affirmative defenses, (1) that the plaintiff has waived its right to accelerate the payment of the principal sum by failing to exercise its option in good faith by refusing to determine the credit standing of the defendants Mooney and (2) that the “due-on-sale clause” in paragraph 17 constitutes an illegal restraint upon the Jenkins’ right of alienation; that the financial status and credit rating of the Mooneys was and *718 is sound and secure and at all times equal to that of the Jenkins, and that no reasonable basis existed to refuse to allow the Mooneys to assume the mortgage indebtedness of the Jenkins; that the Mooneys offered to pay the plaintiff the maximum rate of interest permitted by law at the time of closing the transfer of the mortgaged property from Jenkins to Mooneys and that plaintiff’s desire to renegotiate for a higher interest rate on the mortgage is an insufficient basis upon which to deny assumption of the loan by the Mooneys and thus illegally restricts the rights of the defendants Jenkins to freely alienate their real property and the right of the Mooneys to freely assume the mortgage indebtedness on the transfer thereof.
The motion papers show that the Jenkins, the original mortgagors, conveyed the mortgaged premises to the Mooneys by deed dated December 21, 1979, subject to plaintiff’s mortgage and that the Mooneys assumed and agreed to pay as part of the purchase price of the premises the principal and interest of plaintiff’s note and mortgage.
Although the exact details are in some dispute, it is clear that prior to the conveyance of the mortgaged premises from the Jenkins to the Mooneys the attorney for the Mooneys telephoned the plaintiff at its Ithaca office and advised that the Mooneys were contemplating purchasing the mortgaged premises and desired to assume the mortgage with plaintiff’s consent and that they were prepared to increase the interest rate on the note and mortgage from 8V2% to the statutory rate permitted at the time. On June 19, 1980, the parties stipulated as follows:
“1. The defendants waive any objection they may have for the possible failure of the plaintiff to give to the defendants thirty (30) days advance notice by mail before accelerating the principal balance due on the mortgage.
“2. That at all times herein, the defendants, mooney, have remained and are prepared to increase the interest rate on the remaining balance of the mortgage from the rate contained in the original bond between the defendants, jenkins, and plaintiff, to the maximum statutory rate of interest in effect at the time of closing of the transaction from jenkins to mooney, at which time moo *719 ney assumed and agreed to pay the principal balance due from jenkins to the plaintiff.
“3. That the Plaintiff’s complaint be deemed amended to allege that this action arises under the Constitution and laws of the United States, specifically Article VI of the Constitution (the supremacy clause) and the Homeowner’s Loan Act of 1933, as amended, 12 U.S.C. Section 1461 et seq.”
The plaintiff declined to consent to the proposed transfer and assumption by Mooneys. Effective October 12,1979 for all areas in which it operates the plaintiff had adopted the following policy:
“There will be a moratorium on all Conventional lending until further notice. This moratorium applies to requests for assumptions of existing mortgages and re-finances as well as new loans.
“Any requests for permission to assume an existing mortgage or to re-finance an existing mortgage will be processed on an FHA or VA basis only.
“Conventional applications for permanent mortgages only will be accepted from applicants on new construction where the builder has purchased a reservation of funds, no building loan and mortgages will be granted to an individual applicant.”
The defendants have made no claim that plaintiff was guilty of any misrepresentations in the original transaction with the Jenkins. Nor do they assert any misunderstanding about the existence and the terms of the “due-on-sale clause”.
On this motion for summary judgment the defendants Jenkins, the original mortgagors, have not submitted any reply affidavits or a memorandum of law.
The contract of sale between the Jenkins and the Mooneys signed in October, 1979 established the sale price of the mortgaged premises at $39,700. The contract was made contingent upon the buyers (Mooneys) receiving an FHA mortgage loan for $36,500 with interest at 10y2% per annum plus A% mortgage insurance, and the buyers (Mooneys) to pay 1 point to the lending institution and the sellers (Jenkins) to pay 4 points.
*720 Under an addendum dated December 6, 1979, the contract for the sale and purchase of the mortgage premises was modified as follows:
“1. The sellers shall not pay $1460.00 in points referred to in said purchase offer.
“2. The purchase price shall be reduced to $38,700.00.
“3. The present mortgage shall be assumed by the buyers at the principal balance due thereon as of the date of closing. Sellers shall pay all interest thereon to the date of closing and shall be reimbursed for any balance in the tax escrow account as of the date of closing.
“4. The buyers shall save the sellers free and harmless of and from any and all claims or causes of action arising out of the assumption by the buyers of the sellers mortgage, and this clause shall survive the closing.”
The Jenkins have served and filed a cross claim against the Mooneys for indemnification pursuant to the addendum quoted above. ,
The affidavit of James M. Kerrigan, attorney for the Mooneys, states that he orally requested the plaintiff to consent to the transfer of the mortgaged premises to his clients without invoking the “due-on-sale” clause on November 13, 1979 and was advised at that time that the plaintiff would not consent to a transfer pursuant to paragraph 17 of the mortgage. The addendum to the contract of sale is dated December 6,1979. The Mooneys cannot claim that they are surprised that plaintiffs elected to accelerate the mortgage pursuant to the “due-on-sale” clause on the transfer from the Jenkins to them.
The Federal Home Loan Bank Board was created under the Federal Home Loan Bank Act (US Code, tit 12, § 1421 et seq.) as an independent agency of the executive branch of the United States and is authorized and directed under the “Home Owners’ Loan Act of 1933” to charter, supervise and regulate all Federal savings and loan associations, which includes the plaintiff herein. (US Code, tit 12, § 1461 et seq.)
The Federal Home Loan Bank Board has adopted regulations authorizing Federal savings and loan associations to include a provision in their loan instruments whereby *721 the association may, at its option, declare immediately due and payable sums secured if all or part of the property securing the loan is sold by the borrower without the association’s prior written consent. (12 CFR 545.8-3, 556.9.)
Paragraph 17 in the plaintiff’s mortgage follows the form and contains the provisions and conditions established by the regulations in 12 CFR 545.8-3 and 556.9.
The plaintiff claims (1) that Federal law governs the use of the “due-on-sale” clause, employed by the plaintiff, a Federally chartered banking institution and Federal law specifically authorize its use, (2) that the “due-on-sale” clause is valid and enforceable under New York law, and (3) that the plaintiff has validly elected to declare the entire principal and interest due and payable under the “due-on-sale” clause and is entitled to summary judgment in its favor.
The Mooneys state in their brief that: “The question on this motion for summary judgment is whether the plaintiff complied with its contractual and regulatory obligations by rejecting out of hand the Mooneys’ application to assume the mortgage at a new rate of interest”.
The Mooneys claim that (1) the plaintiff breached paragraph 17 of the Federal Home Loan Mortgage Corporation mortgage and the Federal regulations upon which is based, (2) the offer of the Mooneys to increase the interest rate on the note and mortgage, to the maximum allowed on mortgages in New York was all that plaintiff could require, (3) the plaintiff’s offer of an FHA or VA mortgage was illegal, unconscionable, and not in compliance with the Federal regulations, and (4) the plaintiff has an adequate remedy at law.
On the question of whether Federal or New York State law is applicable, the Mooneys assert in their brief that “Insofar as due-on-sale clause, it is respectfully submitted that there is no difference between New York and federal law on the facts in this case”.
The defendants request the court to deny plaintiff’s motion for summary judgment and to set the case down for trial, or grant summary judgment for the defendants pur *722 suant to CPLR 3212 (subd [b]), “based upon plaintiff’s alleged breach of its mortgage agreement and federal regulations and New York state law.”
The court concludes that the plaintiff is entitled to summary judgment. The motion papers demonstrate that the plaintiff has established its cause of action and that the defenses thereto have no merit.
At the outset the court concludes that the Federal Government through appropriate actions of Congress and the Federal Home Loan Bank Board has fully pre-empted, pursuant to the supremacy clause (US Const, art VI, cl 2) any State regulation of the “due-on-sale” clauses in the loan instruments of Federal associations such as the plaintiff herein. The “due-on-sale” clause contained in paragraph 17 of the mortgage follows the exact terms authorized by the Federal Home Loan Bank Board in its regulations. (12 CFR 545.8-3 [formerly 12 CFR 545.6-11 (f), (g)]; Conference of Fed. Sav. & Loan Assns. v Stein, 604 F2d 1256, 1260, affd sub nom. Stein, Secretary of Business & Transp. Agency of Cal. v Conference of Fed. Sav. & Loan Assns., 445 US 921; Glendale Fed. Sav. & Loan Assn. v Fox, 459 F Supp 903.) The “due-on-sale” clause in plaintiff’s mortgage is valid and enforceable under applicable Federal law. In Conference of Fed. Sav. & Loan Assns. v Stein (supra, p 1260) the United States Court of Appeals succinctly set forth in its opinion the correct rule as follows:
“In our judgment the regulatory control of the Bank Board over federal savings and loan associations is so pervasive as to leave no room for state regulatory control. As this court noted in Meyers v. Beverly Hills Federal Savings & Loan Ass’n., 499 F.2d 1145, 1147 (9th Cir. 1974): ‘Pursuant to its valid statutory authority, the Federal Home Loan Bank Board has promulgated comprehensive regulations covering all aspects of every federal savings and loan association “from its cradle to its corporate grave.” People of State of California v. Coast Federal Savings and Loan Ass’n., S.D. Cal. 1951, 98 F. Supp. 311, 316.’
“The broad regulatory authority over the federal associations conferred upon the Bank Board by HOLA does wholly pre-empt the field of regulatory control over these *723 associations. If state-conferred rights are to be enforced against the federal associations by any regulatory body (a question we do not reach), enforcement must be by the Bank Board.”
Paragraph 15 of the mortgage reads: “15. Uniform Mortgage; Governing Law; Severability. This form of mortgage combines uniform covenants for national use and nonuniform convenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. This Mortgage shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Mortgage and the Note are declared to be severable.”
The defendants’ claim that by virtue of this clause the validity of the “due-on-sale” clause must be determined by the law of New York. The court disagrees. Great Western Union Fed. Sav. & Loan Assn. v Walters (US Dist Ct, WDWn, June 18, 1980) decided this question as follows: “Since the due-on-sale clause set forth in paragraph 17 is clearly contrary to what defendants contend is the applicable law as set forth in paragraph 15; i.e., Washington law, defendants contend that the clause must be declared unenforceable pursuant to the terms of paragraph 15. Although defendants’ argument does have some initial appeal, it is the opinion of this Court that the reference to The law of the jurisdiction in which the Property is located’ in paragraph 15, means the law of the state in which the property is located as preempted or supplemented by federal law. Support for this reading can be derived from the fact that paragraph 15 is set forth in the form deed of trust under the section entitled ‘Uniform Covenants.’ It is clear that this section of the form was intended for national use. Given this reading it is clear that defendants’ argument that paragraph 15 renders paragraph 17 unenforceable is not well taken.”
The court finds no merit in defendants’ claims that the “due-on-sale” clause is an illegal restraint on alienation. *724 The clause in this case does not prohibit or restrict the right of the mortgagors to sell the property. A sale by the mortgagor without the consent of the mortgagee triggers the option of the mortgagee to accelerate the payment of the mortgage. In Williams v First Fed. Sav. & Loan Assn. of Arlington (651 F2d 910), the court rejected a similar claim and held that the “due-on-sale” clause approved by the Federal Home Loan Bank Board was valid and enforceable and was not an illegal restraint on alienation. In this regard that court stated (p 926): “Nevertheless, the lenders have legal rights, too. If they have complied with all the requirements of the law, they are entitled to enforce their due-on-sale clauses, for they are simply not restraints on alienation.”
The court notes that although the defendants pleaded as a defense that the “due-on-sale” clause was an illegal restraint on the defendants Jenkins’ right of alienation, this claim was not treated in the defendants’ brief.
In their brief the Mooneys state that “Insofar as due-on-sale clause, it is respectfully submitted that there is no difference between New York and federal law on the facts of this case”. This -court agrees.
The New York courts have generally held that contractual provisions in a mortgage for “due-on-sale” are valid and enforceable. (Stith v Hudson City Sav. Inst., 63 Misc 2d 863; Mutual Real Estate Inv. Trust v Buffalo Sav. Bank, 90 Misc 2d 675.) There are cases in New York in which the courts have declined to enforce the “due-on-sale” clause in an action to foreclose the accelerated mortgages under unusual circumstances. (See, e.g., Silver v Rochester Sav. Bank, 73 AD2d 81; Nichols v Evans, 92 Misc 2d 938.) The rationale of those decisions is not applicable here. The court notes that no New York case construing the “due-on-sale” clause authorized by the Federal Home Loan Bank Board under 12 CFR 545.8-3. (f) has been cited by counsel. The court has been unable to find any New York decision which considered this clause.
The New York Legislature has obliquely recognized the validity of “due-on-sale” clauses. Section 1 of chapter 421 of the Laws of 1972 added a new section 254-a to the Real *725 Property Law, which as amended by section 5 of chapter 119 of the Laws of 1974 now reads: “If a bond or note, or the mortgage on real property, improved by a one to six family residence occupied by the owner,' securing the payment of same contains (1) a provision whereby the mortgagee retains the right to accelerate the due date for payment of the balance of principal upon a transfer or sale of such real property or by alienation of title of such real property due to an act or operation of law, and (2) a provision for payment of any charge, however denominated, in the nature of a prepayment fee and if a mortgagor sells or transfers his property or if title to the mortgaged property is transferred by act or operation of law and the purchaser requests permission to assume the mortgage or take the mortgaged premises subject to the mortgage, but the mortgagee does not consent to such request ánd thereby necessitates prepayment of the mortgage, the mortgagee shall not levy a prepayment fee; provided, however, that the provisions of this section shall not apply to the extent such provisions are inconsistent with any federal law or regulation.”
This section recognizes the validity and enforceability of the “due-on-sale” clause, but precludes the collection of any prepayment fee. Paragraph 17 which the plaintiff has now invoked contains no prepayment fee or penalty.
The court finds no merit in defendants’ claims that the plaintiff breached paragraph 17 of its mortgage and the Federal regulations upon which it is based.
The plaintiff was not obligated to offer to refinance its mortgage on an FHA or VA basis or on any basis. Paragraph 17 gives the plaintiff the option to declare the full amount of the mortgage due on the sale of the mortgaged premises, and it has exercised its option and the entire principal and interest thereon is now due.
Paragraph 17 describes how the plaintiff may waive its option thereunder, namely, “Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the property is sold or transferred reach agreement in writing that the credit of such person is satisfactory to the lender and that interest *726 payable on the sum secured by this mortgage shall be at such rate as Lender shall request”.
Defendants have offered to increase the rate of interest on the mortgage from 8/2% to 10.25% per annum, the legal rate of interest on traditional mortgages on real property at the time. The rate of interest was not acceptable to the plaintiff at the time. As a matter of financial policy the plaintiff had suspended making conventional mortgage loans at the then current legal rates. Plaintiff’s action was not illegal or unconscionable. The plaintiff was obviously exercising a business judgment in an effort to remain a viable institution in the face of accelerating inflation and increasing interest rates.
As the court noted in Williams v First Fed. Sav. & Loan Assn. of Arlington (supra, p 912):
“The case touches many Americans, for it involves the common experience of purchasing a home. Customarily one contemplates a borrowing secured by a lien on the residential parcel to meet a substantial portion of the purchase price. Few are able first, before buying a house, to accrue all the necessary funds.
“It is from that common experience that the present case evolves. The facts are influenced by another common experience of less ancient lineage, namely, persistent, consistently high, rates of inflation, accompanied by increased interest rates.”
Long-term mortgages with fixed interest rates may be an endangered species of legal documents. Plaintiff, like other thrift institutions, are short-term borrowers and long-term lenders. The cost of deposits accelerates faster than the return on long-term mortgage loans. The “due-on-sale” clause is one authorized contractual provision to mitigate this problem for the lender.
The New York Legislature recognized the problem of lenders faced with long-term mortgage loans at fixed rates by enacting chapter 883 of the Laws of 1980 which adds to the Banking Law a new section 6-f as follows:
“§ 6-f. Alternative mortgage instruments made by banks, trust companies, savings banks, savings and loan associations and credit unions.
*727 “1. Notwithstanding any inconsistent provision of this chapter or any other law of this state, the banking board is authorized to adopt such rules or regulations as shall permit banks, trust companies, foreign banking corporations licensed to maintain a branch or agency in this state, savings banks, savings and loan associations and credit unions to make residential mortgage loans which provide for (a) periodic readjustments of the rate of interest charged for the loan or successive terms of the loan or (b) terms of loan which are shorter than the term of the mortgage or (c) repayment of the principal amount of the loan by regular payments which are not equal in amount throughout the term of the mortgage or (d) any combination of paragraphs (a), (b) and (c) above, subject to the provisions of subdivision two of this section.
“2. Any rules or regulations which are adopted by the banking board pursuant to subdivision one of this section:
“(a) shall provide for disclosures and notices to the borrower with respect to the terms and conditions of the loan and the mortgage, and the banking board may require the adoption of uniform disclosure and notice forms for this purpose;
“(b) shall provide for the conditions governing renewals of the term of the loan;
“(c) shall not permit any uninsured loan secured by residential real property to be made in an amount exceeding ninety percent of the appraised value of the property; and
“(d) shall not allow, with respect to any specific alternative mortgage instrument which permits a periodic readjustment of the rate charged on the loan, for a greater change in rate than that permitted under federal law or regulations to federally-chartered banking organizations located in this state for loans made pursuant to an equivalent alternative mortgage instrument.”
Chapter 883 of the Laws of 1980 also amended the Banking Law by repealing former section 14-a and adding a new section 14-a which provided in subdivision 1 that “The maximum rate of interest provided for in section 5-501 of the general obligations law shall be sixteen per centum per annum.”
*728 On approving chapter 883 of the Laws of 1980, the Governor stated (NY Legis Ann, 1980, p 390) in part: “Currently, State statutes prescribe the maximum rates which can be charged on most types of consumer loans. These rates are inflexible; they are, in most cases, substantially below prevailing market rates; and they are below the rates allowed in most other states. Faced with the high cost of funds, increased overhead, and low consumer interest rate ceilings, many banks and other lenders in New York have been led to restrict sharply the availability of consumer credit, adversely affecting the broad spectrum of New Yorkers who rely on credit.”
Under the facts in this case and the prevailing economic conditions, plaintiff cannot be charged with bad faith or unconscionable conduct in electing to exercise its right to declare the entire amount due on the sale from the Jenkins to the Mooneys and refusing to continue the mortgage contract between plaintiff and Jenkins with the new owners Mooneys at a rate of 10.25% for the balance of the 25-year period ending June 1, 2003.
The motion of the plaintiff for summary judgment is granted. Defendants’ cross motion is denied.
Submit order of summary judgment and the usual order of reference.